Good morning. May it please the court, Kayla Gassman for the appellant Eric Honors. I want to try to talk about two issues today, both the constructive amendment issue and the no contact order, and we'll see how far I get. Starting with the constructive amendment, Mr. Honors is entitled to a new trial on count two, which is the child pornography production count based on a constructive amendment. That's because the trial evidence, the jury instructions, and the closing argument constructively amended the indictment by permitting the jury to convict Mr. Honors of child pornography based on videos made in Texas and Oklahoma instead of the Kansas conduct charged in count two of the indictment. Starting with the language of count two, what is the definition of when an indictment is constructively amendment? What's the test? So I think the best test that I found, and your Honor is certainly right that I think the cases have struggled to identify the line, and they have all said that the line is shadowy or murky. So that remains true, but the FAR case says that it rises to the level of the constructive amendment when it raises the possibility that the defendant was convicted of an offense other than one charged in the indictment. And I think that's sort of, to the extent that there can be a clear test, that's the clearest test. Does it matter if the fact that was changed or allegedly was changed is an element or a means of committing that element? No, it doesn't. And I think this court's cases are very clear about that. I think all of them, I think FAR, Miller is a case we talk about quite a lot, Hunter, I think Sterone even, certainly Miller and FAR are very clear because both of those cases acknowledge that the government, the grand jury was not required to indict with the level of specificity that they did. But once they did, the government is bound by what the grand jury charges it, and the government is bound to that, even if they were not required to make that specific of an allegation in the indictment. And here, the important point, the fact the thing that was changed, the thing that is broadened, is the location of the conduct. So count two charges specifically production of child pornography in the District of Kansas and nowhere else. And I think we can see that it charges the District of Kansas and nowhere else if we compare to the language of count one, because the language of count one charges conduct in the District of Kansas and elsewhere. So this indictment on the face of it is clear that when the grand jury is charging conduct that crosses multiple districts or conduct that occurred in multiple districts, it said so. And in count two, it did not say so. Yet at trial, the evidence included testimony about videos made in Oklahoma and Texas. So the Kansas video that was charged as child pornography was shown to the jury, was played to the jury. This court has it as well. But the minor victim also testified that Mr. Honors made or made her make other videos in Oklahoma and Texas. And then the jury instructions were not specific. And the jury instructions did not instruct the jury that they had to find conduct in the District of Kansas, and in fact instructed the jury that they could convict Mr. Honors if they found he produced any visual depiction with no limitation and no instruction that they needed to find the count based on the Kansas conduct. And defense counsel objected to that? Defense counsel did not object. I don't think this error was fully crystallized until the closing argument, because in the closing argument, the prosecutor repeatedly and expressly asked the jury to convict Mr. Honors of count two based on the Texas and Oklahoma videos. So we've cited those arguments extensively in our briefs. Were those arguments challenged? So the defense counsel argued at closing that the jury should not consider the Texas or Oklahoma videos, and that they could only consider the Kansas video, but we didn't make the correct... Only consider or... Yeah. So the defense counsel argued that the jury had to convict Mr. Honors only if they found that the Kansas video was child pornography, and couldn't base it on the Texas or Oklahoma videos. But we didn't actually make... We were on plain error because we didn't make the correct constructive amendment objection to the district court. We didn't ask the district court to fix that, but we did raise that this was a problem in court and to the jury. But instead, the prosecutor doubled down in rebuttal and said, actually, no, you can convict based on the Texas or Oklahoma videos. And specifically, I think the rebuttal is important because the prosecutor says at page... This is volume three, page 701, we don't need the video in Texas. BJ testified. There's an instruction in here, instruction 21, the evidence of one witness who is entitled to full credit is sufficient for the proof of any fact in this case. There, she's referring to a specific instruction, jury instruction that the jury received that if a witness testifies and the jury finds her credible, then that testimony is sufficient for the proof of any fact. So the prosecutor there is saying not only you can convict on the Texas or Oklahoma videos, but here's a path to doing so with the jury instructions as support. One of the arguments that the government makes is that this is a continuing offense. And though it started in Kansas, it continued through the other jurisdictions. And that we know it's a continuing offense because of the interstate requirement in the crime itself. How do you respond? So I have two responses to that. One is that an offense is a continuing... So we've cited cases, the Cabrales case from the Supreme Court, and I think the Smith case from this court are both cases that say even when an offense can be a continuing offense, it actually is a continuing offense only when it's charged that way. So the conduct needs to be charged in multiple districts for it to be in a continuing offense that occurs in multiple districts. And again, referring back to the difference between count two and count one, we see count one was charged as a continuing offense because it is charged in the District of Kansas and elsewhere. Count two does not have that language. It only charges conduct in the District of Kansas. I think the Cabrales case and the Smith case are very clear that if it's not charged as a continuing offense, if the facts alleged are not a continuing offense, then it isn't. And the interstate commerce element doesn't transform the rest of the conduct, charged conduct, into a continuing offense because using, coercing the minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct, that is charged in Kansas. So that's the crux of the offense. The interstate commerce is a separate element that is then about like either what was used to create that depiction or how it traveled. That it traveled across state lines or that it was made with, I forget the exact language, made with means that cross state lines. That is a separate element about, you know, other kind of tangential things, how it was made or how it traveled. It doesn't then transform the actual crux of the conduct, you know, the using or persuading the minor to engage in sexually explicit conduct to produce a visual depiction. That doesn't mean that that was not charged in the District of Kansas because the language is clear that it was. I thought a crime is committed in the jurisdiction if any element of the crime. So it can be. I think, Your Honor, that's the law is that it can, it can be, a crime can be committed in a jurisdiction if an element, I don't want to get this too wrong, if an element of the crime was committed in that jurisdiction. I think, you know, I think I have to agree that the government could have charged this as a continuing offense or, you know, perhaps. I'm not saying a continuing offense. Maybe I'm missing something, but if one element was committed in Kansas, then the fact that other elements are committed in another state maintains jurisdiction in Kansas. Yeah. It doesn't have to be a continuing offense. Right. No, I think that's correct. We're not saying there's some problem with the venue in Kansas or some problem with jurisdiction in Kansas. What I'm referring, pointing to the. But the offense is committed. If there's jurisdiction in Kansas and venue in Kansas, that's because an element of the offense was committed in Kansas. And the fact that an element was committed in Kansas doesn't mean other elements couldn't be committed in other states. So you can say this crime was committed in Kansas, even though the obnoxious conduct was in Texas or Oklahoma. So I think that's where I would come back to the Cabrera's case and the Smith cases that say, if you're alleging that conduct, then that needs to be in the indictment. I think the indictment would have needed to say in the District of Kansas and in Texas or and in Oklahoma or and elsewhere to identify that that language, that that conduct was the basis for the charging count, too. And it doesn't do that. You know, and I'm not saying they couldn't have charged it that way or that they couldn't charge or approve venue in Texas or Oklahoma. But to do that, that would need to be in the indictment. And, you know, I don't want to. So if an element is committed anywhere but Kansas, that specifically has to be stated in the indictment? Well, you know, I think I don't want to get I think I'm getting too far into like what could be and what has to be included in an indictment. Here there's an allegation the crime was committed in Kansas and parts of the crime, maybe the worst parts of the crime, actually the worst parts of the crime, were committed in Oklahoma and Texas. But it's true that the crime was committed in Kansas because an element was committed in Kansas. And you're not departing from that indictment just because some other elements were committed elsewhere. So I think I have two responses to that. One is that the indictment, we think the language that charging that Mr. Honors produced a visual depiction, a singular visual depiction, in the District of Kansas, full stop, in count two, means that the conduct comprising the child pornography production events occurred in Kansas in count two. I don't want to stray too far into the grand jury transcript because I think there's some knotty, I know there's some knotty problems that come up with that. But that is the reason why I have moved to add the grand jury transcript to the record because if you look at that transcript, when the prosecutor tells the grand jury what the basis is for count two, the prosecutor has the agent specifically identify the video made in Kansas as the basis for count two, describes that video in detail, and gives the grand jury screenshots from the Kansas video, and doesn't reference Texas or Oklahoma videos as child pornography or as production of child pornography at all. So to me, that supports the language of count two in the indictment. And again, it's the question in a constructive amendment isn't what the grand jury is required to charge or how specific the indictment has to be. This court has said several times, if a limiting language is included in the indictment, then the government is bound by that limitation. And that's because the grand jury right is that Mr. Honors has a right to be charged only on a crime that the grand jury indicted him on, because the grand jury interposes a democratic control between the prosecution and the initiation of felony offenses. So if that's what the grand jury charged, then that's what the government is limited to. Perhaps just briefly, I want to say this about the no contact order and then reserve the remainder of my time. I think we've given the court broad reasons and narrower reasons why the no order is impermissible. I think the bottom line is that even if a district court has some inherent authority to impose a no contact order in certain circumstances, this no contact order is far beyond a district court's inherent authority, primarily because the court's inherent authority, that act needs to be tied to protecting the administration of justice. And here we have not challenged the no contact order as it applies to the victim. We have challenged it as it applies to Mr. Honors' wife and Mr. Honors' own children, and there's no evidence or findings that communications with them would interfere with the administration of justice. How can you raise a challenge on behalf of people who aren't your clients? So, I mean, I'm not. I'm raising a challenge on behalf of Mr. Honors, who has his own constitutional rights to a relationship with his children. But you're saying you're not complaining? Maybe I'm misunderstanding. No, we're not challenging the order as it applies to, like, Mr. Honors contacting the victim. But as to the family only, is what you're saying? Yeah, but that's as to Mr. Honors' own children and his wife. What do we do with Grigsby? Well, Grigsby, I think there's a few things you can do with Grigsby. One, they're unpublished, pro se appeals, where even the court acknowledges these issues were not briefed. The merits to the no-contact orders, those were all post-convictions motions to modify the no-contact order and not actually challenges to the merits. So that's one way. I think they're also distinguishable in at least the fact that there was a request for that kind of protection in Grigsby. The mother of the children requested that kind of protection. We don't have that here. I think that's a significant fact. And, you know, just the fact that we've raised it on direct appeal, which Mr. Grigsby did not. I'd like to reserve at least the time I have left. Thank you. Thank you, counsel. Mr. Hart. Good morning, Your Honors. My name is Jason Hart. I'm an assistant United States attorney out of the District of Kansas. I'm typically a trial attorney. I was on the trial in this case. I was also the attorney that handled Grigsby, so I can answer some of those questions. I don't frequently appear in front of you, but I have on occasion. I will try to make sure I answer your questions. And if you have any that you want to jump right to, feel free to fire them at me. We feel free. I know you feel free. I just want to encourage you. Okay, so looking at the indictment, there is a glaring difference between Count 1 and Count 2. Count 1 says Kansas and other jurisdictions or other... And elsewhere. And elsewhere. That's right. And Count 2 says in the District of Kansas. It does look to me like what the charge was in the indictment was the production of a visual depiction of such conduct. And that refers back to the conduct that took place in Kansas. Okay. And why don't... I mean, why haven't you expanded the charge by the jury instruction that says it's not a visual depiction made in Kansas. It's any visual depiction made elsewhere. Okay. I'm going to try to unpack all that. First thing, in the transportation charge, which is Count 1, where he actually transports her from Kansas to a different location. We actually have transportation from Kansas through Oklahoma to Texas. And I would submit to the court that and elsewhere is surplusage. It's not necessary, but we put it in there to help the grand jury or the jurors understand that this is not transportation in Kansas, but it's going to be into another state. But I think it's ultimately surplusage. And so the fact that it's there doesn't mean it needs to be in the Count Number 2. But what is also different is Count Number 1 actually, it involves different things. It's the actual act of transportation across state lines. It has to be for a particular purpose, which can be things that happen either in Kansas or elsewhere. But ultimately, it is that component of it has to contemplate this. And I almost said production of child pornography because that's not actually what it's called. It's sexual exploitation of a child. And we often refer to the depictions, but that's actually incorrect. We need to start with the verbs. And in this particular case, it's use or coerce. And Judge Hartz, I think was sort of saying that the premise is that you may have conduct that starts in Kansas, but may be completed elsewhere. And in this case, where our facts were that the defendant lured her into the semi-truck and then wielded a gun at her, which you can see in the videos that he created, had her crying and terrified. Arguably, he could have completed the coercion at that point, which is an element, is the verb. But he hadn't necessarily completed the other parts of it, which is having her engage in sexually explicit conduct and then producing a visual depiction of such conduct. But he did produce at least one video, actually three, right? Actually, more than that. By his own admission, there are... In Kansas. No. Let me finish my... I'm sorry. Yes. He did actually make her take a video or he took the video in Kansas, sitting in the driveway in the cab of the truck.  And this indictment says that on or about February 15th in the District of Kansas, verbs, the defendant did persuade, entice, coerce for the purpose of producing a visual depiction. Why isn't that limited of such conduct, meaning the conduct in Kansas? Why isn't that limited? Well, because it is part... That's not an element of the offense. The depiction itself is not an element. It is a means of proof of his purpose, as well as a means of proof of the interstate nexus. There's three different versions for the interstate nexus. There is one that he knows... Or Texas, and making more than one video. And it doesn't have to say that. Why not? Because the depiction itself is not an element. It is a means of proof. And so what we have to show is that his purpose was to engage her in sexually explicit conduct. And what's important about that is government's exhibit number three, which is the sort of the heart of a lot of the argument, the defense was arguing that this isn't actually sexually explicit conduct. While he has a gun, and he's made her terrified, and he has her disrobe, the argument that defense counsel made at trial was it was an inadvertent capturing of her genitalia during this, such that it's not a lascivious exhibition of the genitals. Now, if it had been as the victim described later, the depictions, the recordings of oral sex, that is per se sexually explicit conduct under 18 U.S.C. 2256, section two. If it was the depiction of the sexual intercourse, that would again be per se sexually explicit conduct under the statute. But lascivious exhibition then has this sort of qualitative analysis, which we use in the DOST factors, that the grand jury then has to have some details on. And then later, the jury has to have some details on to determine if it meets the definition of sexually explicit conduct. Now, I would note in this case, that does not appear to be an argument that government's exhibit number three is not, does not depict sexually explicit conduct. That was made at the trial, and they seemingly lost it, now abandoned that. So that would actually kind of go to my argument about harmless error that we made in our briefing. That we would still achieve the same result. But in this case, the point is, the depictions are means of proof, not elements. And in this particular... Well, how, why is this different than the case where you have, in the indictment, it charges one fraudulent statement. And then when they go to trial, they bring in evidence of a different fraudulent statement. And we said, you can't do that. That was an effectively an amendment of the indictment. I think that's, that may have been the Miller. Is it Farr or Miller? I can't remember. It's one of them. But the case that you talk about, we discussed in the briefing. And the difference is, is that the statement that in that case was, one, expressly identified in the indictment. And two, for a false statement, it is specific to the statement itself. It doesn't talk about using coercing. It doesn't have all the other verbs. So it's the false statement itself. And then that statement has to have, my memory serves, some materiality. And so when you have that charge, it's not a continuing offense. It's event-specific. It is sort of transactional in its nature. Whereas 2251, which involves using coercing and all the other verbs for a particular purpose, and then having the interstate nexus, which includes all these other things, that incorporates a much broader range of conduct over one jurisdiction into the next. And what is important is, in that case, I believe it's either Miller or it's Farr. And I can't remember off the top of my head. But they talk about how the government could have used broad language. And in this particular case, the indictment is as broad as it could be. We didn't include any particularly sexually explicit conduct. We didn't identify that it was oral sex, or that it was sexual intercourse, or lascivious exhibition. But it does say he produced a visual depiction of such conduct in the District of Kansas. Well, that's in part one of the means of proof, is that there is a visual depiction that's actually transported. But it can also be that... Well, the transportation's the prior count. No, no, no, no, no. That's of the human. Right. But you have to show that it affected interstate commerce. But you have limited the indictment to the visual depiction of the sexually explicit conduct that was produced through enticement in the District of Kansas. No, I have to show that his purpose is to produce a visual depiction of sexually explicit conduct. And if you were to sit here and look at the series of images that we have, which the first one is really just blackout, and just you hear her crying. The second is he explains... It's a little bit more brief. There's some commentary that he makes. And I can't remember if it's in that one or the next one, where he says he's going to keep her for a couple of days. But these are evidence of his purpose, his mens rea, that it's going to become sexually explicit conduct. That third video where he tells her to disrobe is really good evidence that this is going to be about sexually explicit conduct. And he's going to make recordings of it. Because he is, in fact, recording her at that time. But it doesn't have to be that he has stopped and he's done. And that we just go, sorry, we don't pay attention to anything else. And as we noted in the arguments on the motion about supplementing the record, and as we discussed here, there was presentation about all these other statements that the defendant made, that were presented to the grand jury, that the defendant made about her producing images, that he then moved to a different phone, that there was additional sexual contact that was recorded down in Texas. And so I don't think the indictment itself, there's any language that is limiting. And in fact, the presentation to the grand jury aligns very closely with what was presented to the jury. Now, on that point, there was a question about whether this jurisdictional argument was argued or whether this was argued at the trial court level. And what is interesting is if you go into the record on appeal, there is some discussion about whether the instruction as to count two needed to include in Kansas. And defense counsel points you to the record on appeal, volume three at pages 607 to 608. And if you read through there, what you will see is that the court takes out the in Kansas, which is number four, and then the date, which is number five, and actually ask trial counsel about that. And they say, and I can't, we have no objection to striking those. And they basically say, yeah, we agree. This is not an issue. But then they turn around in arguments and argue that jurisdiction stopped at the border. And that then prompts the response from Ms. Gordon, who was arguing the case at that, in the oral arguments or closing arguments, prompts her response to clarify that. Because we'd already had all the testimony about, well, even if this image, government's exhibit number three, isn't sexually explicit, as Ms. Amicks had argued, there's still these other, his purpose is clear that he's going to make recordings. We actually have recordings. The recordings we don't have, but we don't necessarily need to have them. But the devices that were used were transported. We presented that evidence. The semi-truck that he used as a sort of mobile studio was transported in Interstate Commerce. And he had reason to know from his statements of moving the images that she described from one phone to another phone, that those images would then be transported in or affecting Interstate Commerce. I'm going to try and move you before you run out of time. Did the district court have any statutory authority to reopen the procedures after sentencing? Well, I would say that 18 U.S.C. 3771 provides the court with the authority to accord the victim the rights. Well, that appears to, as I look at that, it relates to ongoing court proceedings. And here, we don't have any victim that's involved because it carved out the victim. And we don't have witnesses that are being intimidated. His trial's over. Okay. He's done. On that point, if we didn't have a restitution claim, I would agree with you that we don't have ongoing proceedings. But in this particular case, we have a restitution claim. And that was actually the genesis of getting the guardian ad litem. When you look at 18 U.S.C. 3664D, sub part five, it talks about that the victim has the ability, even after the initial restitution request, the victim has the ability to come in after they discover additional losses. They have 60 days after the discovery to come back in the proceedings. But this has nothing to do with restitution. This is a no-contact order that after he was sentenced, the court first says, well, I don't have any authority. It's in the Bureau of Prisons now. And then comes back and opens it up and enters these no-contact orders. And, you know, I don't see any statutory authority. And to the extent there are cases dealing with inherent authority, they're all dealing with the administration of justice in a proceeding because of harassment of jurors or witnesses or victims. And that's just not present here. Well, I think it is. And I would say this, in terms of ongoing proceedings, I think you could have definitely an instance where you have a defendant who is maintaining contact with family members in order to prevent, you know, you don't need therapy. This didn't really happen. It wasn't that bad. All of those things. And so the idea that there is not ongoing proceedings sort of ignores the fact that the statute clearly contemplates that a victim could come back in at any point in time and within 60 days of finding further losses, which would clearly be something like therapy, make a request. And it is ongoing harassment of the victim and particularly through the victim's family that the court is trying to address. This is ultimately, I think, part and parcel with 3771, which is to accord protection for the victim that would include, I think, in the normal course, the victim's immediate family. Now, if this was a case where we had a stranger who had abused minor victim one and she made a request for a no-contact order relative to her family members, this court would have no problem going, obviously, yes, that makes sense. The only thing that complicates this is because the defendant's relationship to those family members. And what he's trying to say is, as a convict, you know, you're a couple of minutes over time, so just, I'll let you finish your thought, but I'm sorry, I didn't even notice. In this particular instance, because we have a defendant who's been convicted of sexually abusing a minor victim and he is saying that his rights trump hers, even though he has been convicted of this particularly awful offense, and we respectfully reject that contingency. Thank you. Thank you, counsel. She should have two minutes because he went over. Give her two minutes total. Oh, thank you. I want to come back to the constructive amendment and specifically this point that the discussion that has been brought up about whether the indictment had to charge a specific visual depiction and whether that's an element. As I said in the rebrief, I think that's not the question. I'm going to point the court to the specific quote from Miller, which is, a constructive amendment occurs when the indictment alleges a violation of the law based on a specific set of facts, but the evidence and instructions suggest that the jury may find the defendant guilty based on a different, even if related, set of facts. And then in Farr, this court says that the language employed by the government in its indictments becomes an essential and delimiting part of the charge itself, such that if an indictment charges particulars, the jury instructions and evidence introduced in the trial must comport with those particulars. And Miller expressly acknowledges that the government in that case did not have to charge the specific false statement, but because they did and the grand jury indicted based on that, the government was limited to proving that false statement. The government here also said that a false statement isn't a continuing offense and that that's some distinction between this case and Miller. False statements can also be a continuing offense. We cited Smith, this court's case in Smith, which is about false statements being a continuing offense. I'll direct you to Smith to read that, but it does acknowledge that it can be charged as a continuing offense. So again, that's not a distinction between this case and Miller. We think this case is on all fours, the indictment charged in the District of Kansas producing child pornography, using the minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct in the District of Kansas. The evidence, the jury instructions, and in particular, the closing argument expanded that by allowing the jury to convict based on the uncharged conduct. The fact that the government says that the videos in Texas and Oklahoma were per se sexually explicit conduct, I think just proves how prejudicial it was to constructively amend the indictment in this way by telling the jury that they could disregard Mr. Honor's defenses to the charged conduct, to the charged Kansas video, and instead use their imaginations about what would have been depicted on the Texas and Oklahoma videos. That just proves that this error affected Mr. Honor's substantial rights. Our case law is pretty confusing on constructive amendment. Does that mean this error is not plain? So I don't think it does mean that error is not plain in large part because this case is so similar to Miller. And in Miller, it was the same situation where this court was, you know, facing a ruling, a plain error ruling on the same case law that does say sometimes it's hard to find the difference. But here, there is not difficult to see that the evidence, jury instructions, and closing argument broadened the basis for conviction beyond the Kansas conduct that was charged in the indictment. Thank you. Thank you very much, counsel. Case is submitted. Counselor excused. And if you can provide any guidance that you think would be helpful on whether this needs to be kept confidential, I'd have a hard time seeing that this was different from other cases like this. But if you can submit anything that you think could be helpful to the court on that, we'd appreciate it. Okay. Case submitted. Counselor excused. Court will be in recess until 8 30 tomorrow morning.